UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| |  |
|---|---|
| VALLEY ELECTRONICS AG, VALLEY ELECTRONICS GMBH, *and* VALLEY ELETRONICS, LLC, <br><br> *Plaintiffs*, <br><br> — against — <br><br> CHELSEA B. POLIS, <br><br> *Defendant*. | 20-CV-2133 (ARR) (LB) <br><br> NOT FOR PRINT OR ELECTRONIC PUBLICATION <br><br> OPINION & ORDER |

ROSS, United States District Judge:

On May 11, 2020, plaintiffs Valley Electronics AG, Valley Electronics GmbH, and Valley Electronics, LLC (collectively, "Valley") commenced this diversity action against defendant Chelsea B. Polis. Compl., ECF No. 1. Valley asserts a single claim of defamation against Polis, alleging that she has conducted a "smear campaign" against it and the fertility-tracking devices that it markets in the United States. *Id.* ¶¶ 1, 9, 17. Polis now moves to dismiss, arguing that the court lacks subject-matter jurisdiction over this action and that Valley fails to state a claim upon which relief may be granted. Mot. Dismiss 1–2, ECF No. 17-1. For the reasons set forth below, Polis's motion to dismiss is granted.

### BACKGROUND[1]

**I.     Extrinsic Evidence**

As an initial matter, Polis requests that I consider certain extrinsic evidence in reviewing

---

[1] The following facts are drawn from the complaint or, as explained below, the exhibits submitted by Polis along with her motion to dismiss, and they are presumed to be true for the purpose of deciding this motion to dismiss. *See, e.g.*, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

the instant motion, *see id.* at 6 n.4, and Valley has not indicated any opposition to this request. "A court may consider on a Rule 12(b) motion, in addition to the pleading itself, documents that are annexed to or referenced in the complaint, documents that the plaintiff relied on in bringing the suit, and matters of which judicial notice may be taken," *Brahms v. Carver*, 33 F. Supp. 3d 192, 197 (E.D.N.Y. 2014), including "internet materials," *Ganske v. Mensch*, No. 19-CV-6943 (RA), 2020 WL 4890423, at *1 (S.D.N.Y. Aug. 20, 2020) (citation omitted). Accordingly, I will take judicial notice of the following materials submitted by Polis as exhibits to her motion to dismiss: Exhibit 2, a copy of the article referenced in ¶ 19 of the complaint; Exhibit 2(e), a copy of the article referenced in ¶ 18 of the complaint; Exhibit 4, a copy of the article referenced in ¶ 20 of the complaint;[2] Exhibit 5, a screenshot of the conversation held on the Instagram social media platform referenced in ¶ 21 of the complaint; Exhibit 6, a screenshot of the conversation held on the Twitter social media platform referenced in ¶ 22 of the complaint; Exhibit 7, a screenshot of the conversation held on the Instagram social media platform referenced in ¶ 23 of the complaint; and Exhibit 8, the email exchange referenced in ¶ 24 of the complaint. *See* Andrews Decl. 23–28, 51–61, 130–37, 138–43, 144–49, 150–53, 154–56, ECF No. 17-3. These exhibits, which include Polis's allegedly defamatory statements as well as their immediate contexts, are "integral to the allegations in the complaint" and provide "proper context for understanding [Polis]'s statements." *Ganske*, 2020 WL 4890423, at *1.

---

[2] Exhibits 2, 2(e), and 4 are also publicly available on the Internet. *See* Chelsea B. Polis, *How an Unethical Company (Daysy) Responded to Retraction of Their Study*, http://chelseapolis.com/blog/how-an-unethical-company-daysy-responded-to-retraction-of-their-study (last updated September 9, 2019); Stephanie M. Lee, *A $330 Thermometer Claimed to Be 99.4% Accurate in Preventing Pregnancy. But the Study It Was Based on Just Got Retracted* (May 14, 2019), https://www.buzzfeednews.com/article/stephaniemlee/daysy-fertility-tracker-science-retraction; Victoria Song, *The Apple Watch's Next Trick Could Be Battling Pseudoscience—But Questions Remain* (Sept. 13, 2019), https://gizmodo.com/the-apple-watchs-latest-trick-could-be-battling-pseudos-1838021130.

## II. Factual Background

### A. Valley and the Daysy Device

Plaintiffs Valley Electronics AG (a Swiss corporation) and Valley Electronics GmbH (a German corporation) are "medical technology companies with a long track record of developing and distributing fertility-tracking devices." Compl. ¶¶ 2–3, 9. Plaintiff Valley Electronics, LLC (a Pennsylvania-based company) distributes Valley's products in the United States. *Id.* ¶ 9. Valley is registered with the U.S. Food and Drug Administration ("FDA"), and its products are "listed with the FDA as exempt, proceptive, fertility diagnostic devices." *Id.* ¶ 11 (quotation marks omitted).

Valley's products "help women plan their lives" by providing "information" that "women can use . . . to, among other things, plan a pregnancy." *Id.* ¶ 9. Valley's products include the Daysy, a device used to "monitor the female menstrual cycle and identify the fertile and infertile phases of the menstrual cycle based on reliable, precise and computer[-]assisted, basal-temperature monitoring." *Id.* ¶¶ 9–10. The "Daysy's method falls under the umbrella of fertility awareness-based methods and is built on Basal Body Temperature tracking, menstruation tracking, and a self-learning algorithm to calculate the user's fertile and infertile days." *Id.* ¶ 10. Although "[t]he Daysy is functionally equivalent" to prior Valley products that have been on the market since at least 1994, "using the Daysy with the DaysyView app enables users to connect a fertility tracker to a mobile device for the first time." *Id.* ¶ 10.

In 2018, the Journal of Reproductive Health published a Valley-funded but independently peer-reviewed study entitled "Improving Usability and Pregnancy Rates of a Fertility Monitor by an Additional Mobile Application: Results of a Retrospective Efficacy Study of Daysy and Daysy View app" ("2018 Study"). *Id.* ¶ 12. The 2018 Study "investigate[d] whether combining the use of the Daysy app with the Daysy monitor would lead to higher user engagement and result in

higher overall usability of the method." *Id.* Incidentally, the 2018 Study found that use of the Daysy resulted in "a very low Pearl Index"—"a scale commonly used in scientific trials for reporting the number of *unintended* pregnancies in 100 woman-years of exposure (e.g., 100 women over one year of use or 10 women over 10 years of use)." *Id.* "A lower Pearl Index represents a lower chance of getting unintentionally pregnant." *Id.*

In 2019, the Journal of Reproductive Health retracted the 2018 Study "on the basis that its conclusions were supposedly unreliable due to alleged selection bias and the retrospective self-reporting of whether pregnancies were intentional." *Id.* ¶ 15. "The authors of the 2018 Study did not agree with the retraction." *Id.* Nevertheless, "Valley stopped referencing the 2018 Study on its website and in its marketing materials," and "Valley made no further reference to the potential preventative value of its monitor." *Id.* ¶ 16.

### B. Chelsea Polis and the Allegedly Defamatory Statements

Defendant Polis (a New York domiciliary) is "a reproductive health epidemiologist." *Id.* ¶¶ 5, 14. She has written about Valley and Daysy on her website, www.chelseapolis.com (the "Website"), and on social media. *Id.* ¶¶ 15, 19, 21–25. She has also provided interviews about Valley and Daysy to online publications. *Id.* ¶¶ 18, 20. Valley alleges that Polis has defamed it in a June 6, 2019 article published on her Website, in a May 14, 2019 article published on buzzfeednews.com ("BuzzFeed"), in a September 13, 2019 article published on gizmodo.com ("Gizmodo"), and on various social media platforms, including Instagram. *Id.* ¶¶ 18–25.[3] Valley alleges that "numerous Valley customers and potential customers have seen one or more of Polis's

---

[3] In 2018, Polis also "published an article contending that the 2018 Study's methodology was flawed." Compl. ¶ 15. Valley contends that her "vicious campaign" of defamation began, however, only after the retraction of the 2018 Study and "[d]espite the changes in Valley's marketing materials." *Id.* ¶ 17.

4

false and defamatory statements" and thus "many women . . . are foregoing the[] use" of "natural, basal-temperature, fertility techniques." *Id.* ¶ 26. As a result, Valley has suffered harm to its "reputation and integrity" as well as "exposure to contempt, ridicule, shame and lost business." *Id.* ¶ 32.

### i. Website Article

On June 6, 2019, Polis published an article on her Website entitled "How an unethical company (Daysy) responded to retraction of their study" (the "Website Article"). *Id.* ¶ 19; Mot. Dismiss Ex. 2. Valley specifically identifies the following statements from the Website Article as allegedly defamatory:

- "Daysy misrepresented their evidence-base to their customers."
- "Daysy pointed worried customers to a prior study . . . that they *know* is flawed."
- "[N]o reliable estimate of [the efficacy of Valley's products] exists at all."
- "Daysy made many other outrageous claims . . . far too many to list."
- "I'm glad to have helped to remove junk science [i.e., the 2018 Study] from the literature. Hopefully, fewer people will be made vulnerable to unintended pregnancy via misleading, unsupported claims."
- "This company has no shame or integrity, and I am pleased to have played a major role in shining light on their deceptive and dishonest practices."
- "Daysy recklessly rejected the Editor-in-Chief's decision to retract [the 2018 Study]."
- "Existing/potential customers should be aware of how unethical this company is."

*Id.* ¶ 19; Mot. Dismiss Ex. 2. Valley alleges that "[e]ach of the[] statements" identified above "was false when made" because Valley has not engaged in misleading, deceptive, or dishonest business practices, its products are scientifically supportable, and "Valley is extremely ethical." Compl. ¶

5

19. Polis also "sent a link to the article . . . to at least one of Valley's consultants, under cover of an email stating that she 'wanted to ensure that you are aware of the ethical concerns about the company's actions.'" Compl. ¶ 24; Mot. Dismiss Ex. 8.

      **ii.    BuzzFeed Article**

On May 14, 2019, an article was published on BuzzFeed entitled "A $330 Thermometer Claimed to Be 99.4% Accurate in Preventing Pregnancy. But the Study It Was Based on Just Got Retracted" (the "BuzzFeed Article"). *Id.* ¶ 18; Mot. Dismiss Ex. 2(e). The BuzzFeed Article discusses the retraction of the 2018 Study and provides statements from multiple individuals, including Polis. The Buzzfeed Article specifically quotes Polis as stating that "[i]t does not appear this company is very interested in providing accurate information to its potential consumer base." Compl. ¶ 18; Mot. Dismiss Ex. 2(e).[4] The Buzzfeed Article further notes that "[f]or Polis and other critics, Daysy is just one of the many fertility products now flooding the market without solid evidence to stand on." Compl. ¶ 18; Mot. Dismiss Ex. 2(e).

      **iii.    Gizmodo Article**

On September 13, 2019, an article was published on Gizmodo entitled "The Apple Watch's Next Trick Could Be Battling Pseudoscience—But Questions Remain" (the "Gizmodo Article"). Compl. ¶ 20; Mot. Dismiss Ex. 4, ECF No. 17-3. The Gizmodo Article primarily focuses on an announcement by Apple Inc. that "it would expand its health initiatives by embarking on three new health research studies . . . to investigate a range of topics including women's health." Mot. Dismiss Ex. 4. At the beginning of the Gizmodo Article, the author writes:

---

[4] Although not mentioned in the complaint, the BuzzFeed Article also quotes Polis as stating that "'[m]y concern is that these are overinflated estimates, and that people are being put at risk of unintended pregnancies' because publishing in scientific journals appear to make a company credible." Mot. Dismiss Ex. 2(e).

6

> It's increasingly hard to tell what's pseudoscience and what's backed by legitimate research . . . particularly . . . in the women's health tech space, where some period tracking apps use dubious science to market themselves as contraceptive devices that can help you avoid pregnancy. In May, the Daysy fertility tracking thermometer that claimed it was 99.4 percent accurate at preventing pregnancy came under fire after it was revealed the study backing its claims was little more than cleverly worded marketing. The study was retracted, and Daysy is now the subject of a legal investigation that could lead to lawsuits.

Compl. ¶ 20; Mot. Dismiss Ex. 4. Valley alleges that Polis "is the source of these statements" and that they "were false when made" because "Valley is not the subject of a 'legal' investigation by any official, regulatory or governmental agency." Compl. ¶ 20. Elsewhere in the Gizmodo Article, Polis is unrelatedly quoted discussing "Apple's Cycle Tracking app." Mot. Dismiss Ex. 4.

### iv. Social Media Posts

Valley alleges that "Polis has made literally hundreds of negative posts about it" on social media, though Valley specifically identifies only three such posts. First, "Polis responded to a comment by a member of" a "'fertility awareness method' group site[] on" the Instagram platform with the following post (the "First Instagram Post"):

> [Y]ou note that Daysy "only tells you when are fertile". But there are actually no scientific publications demonstrating how accurately Daysy does this. . . . The company that makes this devise is particularly unethical and I'm so upset to see people on social media and elsewhere being drawn in by their slick advertising. I wish the best of luck to the lawyers who are trying to assist people who may have been harmed by deceptive advertising.

Compl. ¶ 21; Mot. Dismiss Ex. 5, ECF No. 17-3. Valley alleges that "[t]hese statements were false when made because . . . (a) Valley's advertising and marketing statements . . . are not misleading . . . ; (b) Valley is an ethical company; [and] (c) . . . Valley is not the subject of a 'legal' investigation by any official, regulatory or governmental agency." Compl. ¶ 21. In a prior post within the same conversation, Polis states that "Daysy is being investigated by a law firm for deceptive advertising" and she provides a link to firm's website. Mot. Dismiss Ex. 5.

7

Second, Polis responded to a post from a user on the Twitter platform stating that "Daysy is registered with the FDA and complies with the regulations accordingly" with the following post: "Daysy is not, in fact, registered with the FDA. . . . If you believe otherwise please share a link, as I have looked into this specific question" (the "Twitter Post"). Compl. ¶ 22; Mot. Dismiss Ex. 6. Valley alleges that "[t]hese statements were false when made" because "the FDA has exempted proceptive devices such as Days from registration," "Valley is registered with the FDA, and Daysy is listed with the FDA as an exempt, proceptive, fertility diagnostic device under product code LHD." Compl. ¶ 22. The user replies to Polis's response by posting a screenshot purportedly "[f]rom the FDA website" appearing to show Daysy listed under "Registration & Device Listing." Mot. Dismiss Ex. 6. Polis responds again: "Thanks for posting that. My understanding is that 'registered' is quite different than 'cleared' or 'approved'. Anyway this says 'proceptive'. Daysy is not cleared or approved to be marketed as a contraceptive method - which they definitely do, using slippery language." *Id.* Polis follows up in a separate post providing both a link to a website and a screenshot with "[m]ore on what 'registered' means to FDA (i.e., essentially very little)." *Id.* Subsequently, in response to another user, Polis states that she is "very concerned by the marketing language being used by this company to sell this device, when it hasn't been approved for use as a contraceptive method." *Id.*

Third, Polis responded to a post from a user on the Instagram platform stating that the Daysy is "a good choice" with the following post (the "Second Instagram Post"): "By promoting this device on your page you are putting people in harms way." Compl. ¶ 23; Mot. Dismiss Ex. 7. Valley alleges that this "statement was false when made because[] using the Daysy does not put anyone in 'harm's way.'" Compl. ¶ 23. The user replies to Polis's response asking "how so exactly?" Mot. Dismiss Ex. 7. Polis answers by stating "[p]lease read my blog where I summarize

8

the unethical behaviors the company has demonstrated" and providing a link apparently to the Website Article. *Id.*

### III. Procedural Background

Valley filed this defamation action on May 11, 2020. Compl. Polis served a motion to dismiss on August 13, 2020. Def.'s Mot. Valley served its opposition on August 27, 2020, Pls.' Opp'n, ECF No. 17-4, and Polis served a reply on September 3, 2020, Def.'s Reply, ECF No. 17-5. Valley subsequently filed a letter requesting oral argument on Polis's motion to dismiss. Pls.' Letter, ECF No. 18.[5]

## STANDARD OF REVIEW

Polis moves to dismiss Valley's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim are substantively "identical," *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999), although on a 12(b)(1) motion the party invoking the court's jurisdiction bears the burden of proof, whereas on a 12(b)(6) motion the moving party bears this burden, *see Baskerville v. Admin. for Children's Servs.*, No. 19-CV-602 (AMD) (LB), 2020 WL 59826, at *1 (E.D.N.Y. Jan. 6, 2020). In deciding both motions, I must construe the complaint liberally, "accepting all factual allegations . . . as true, and drawing all reasonable inferences in [plaintiffs'] favor." *Lundy*, 711 F.3d at 113 (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). Dismissal is proper under Rule 12(b)(1) for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to

---

[5] I conclude that oral argument is not necessary, and I decide the instant motion on the parties' paper submissions.

adjudicate" the claim. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Dismissal is proper under Rule 12(b)(6) for failure to state a claim when the complaint does not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Valley need not include "detailed factual allegations" in its complaint, but "[t]hreadbare recitals of the elements of cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). I am "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Subject-Matter Jurisdiction

Polis argues that the court lacks subject-matter jurisdiction under Rule 12(b)(1) because Valley's complaint fails to meet 28 U.S.C. § 1332(a)'s amount-in-controversy requirement. Def.'s Mot. Dismiss 12–14. A plaintiff must demonstrate to a "reasonable probability" that it may seek damages in excess of the statutory jurisdictional amount of $75,000. *See Scherer v. Equitable Life Assurance Soc'y of United States*, 347 F.3d 394, 397 (2d Cir. 2003) (citation omitted); 28 U.S.C. § 1332(a). "This burden is hardly onerous, however," because courts recognize "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer*, 347 F.3d at 397 (citation omitted). Polis thus faces a "high bar for overcoming this presumption," as she "must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." *Id.* (citation and quotation marks omitted). "[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d

Cir. 1982).

Polis argues here that "there is no legal certainty that Valley could recover the amount alleged or that its damages alleged were not feigned to satisfy jurisdictional minimums." Def.'s Mot. 13. But the relevant standard, of course, requires Polis to demonstrate to a legal certainty that Valley could *not* recover the amount alleged in apparent good faith on the face of the complaint. *See, e.g.*, *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 229 (2d Cir. 2017) ("[F]or dismissal to be warranted, it must appear to a legal certainty from the complaint that the plaintiff cannot recover sufficient damages to invoke federal jurisdiction." (citation and quotation marks omitted) (emphasis omitted)). Under that standard, I find that Valley has adequately, although just barely, pleaded subject-matter jurisdiction. In particular, Valley alleges that, "as a direct and proximate result of" Polis's allegedly defamatory statements, "many women" are "forgoing . . . use" of products like the Daysy and that Valley has suffered "lost business," in addition to "harm to Valley's reputation." Compl. ¶¶ 26, 32. Valley alleges damages in excess of $1,000,000. *Id.* ¶¶ 32, 34(a). Accordingly, I accept the complaint's good-faith representation that the amount-in-controversy requirement is met. *See, e.g.*, *Taormina v. Thrifty Car Rental*, No. 16-CV-3255 (VEC), 2016 WL 7392214, at *2 n.3 (S.D.N.Y. Dec. 21, 2016).

## II. Failure to State a Claim

Polis principally argues that Valley fails to state a claim under Rule 12(b)(6) because her allegedly defamatory statements constitute "truthful statements, protected opinion, or rhetorical hyperbole." Def.'s Mot. Dismiss 1–2, 16–22, 26–27. Polis also argues that the statements constitute "privileged communications," that Valley was required but failed to plead malice, that the "undated" social media posts "may very well be outside the one-year statute of limitations," and that Polis did not even make two of the statements. *Id.* at 15–16, 22–26. Because I conclude

11

that none of the statements identified by Valley, considered in their proper context, constitute actionable false statements of fact attributable to Polis, I need not address Polis's additional contentions.

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (citation omitted). "An action for defamation that is expressed in writing or print," including on the Internet, "constitutes the common law cause of action for libel." *Murawski v. Pataki*, 514 F. Supp. 2d 577, 589 (S.D.N.Y. 2007); *see also, e.g.*, *Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 88 (2d Cir. 2003). Under New York law, to state a claim for libel, plaintiffs must allege: "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm"—that is, unless the statement constitutes defamation per se. *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 41 (1st Dep't 2014)). A statement that "tend[s] to injure another in his or her trade, business, or profession" may constitute defamation per se. *Wilson v. New York*, No. 15-CV-23 (CBA) (VMS), 2018 WL 1466770, at *4 (E.D.N.Y. Mar. 26, 2018) (quoting *Konig v. CSC Holdings, LLC*, 977 N.Y.S.2d 756, 758 (2d Dep't 2013)).

"As a threshold matter, a court must determine whether a particular statement can reasonably constitute defamation." *Doe v. White Plains Hosp. Med. Ctr. (WPHMC)*, No. 10-CV-5405 (GBD), 2011 WL 2899174, at *2 (S.D.N.Y. July 8, 2011), *aff'd sub nom. Doe v. French*, 458 F. App'x 21 (2d Cir. 2012) (summary order). This is because "statements that express opinions or hyperbole, rather than facts, do not constitute actionable defamation." *Goldman v. Reddington*, 417 F. Supp. 3d 163, 172 (E.D.N.Y. 2019). In particular, "pure opinion"—"a statement of opinion

which is accompanied by a recitation of the facts upon which it is based"—is "not actionable because a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture." *Doe*, 2011 WL 2899174, at *3 (citations and quotation marks omitted); *see also, e.g.*, *Primiani v. Vintage 185 Inc.*, No. 18-CV-2237 (ADS) (AYS), 2019 WL 486087, at *3 (E.D.N.Y. Feb. 6, 2019); *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014).

Whether a statement is "opinion" or "fact" depends on the following factors: (i) whether the specific language has a precise meaning that is readily understood or whether it is indefinite and ambiguous; (ii) whether the statement is capable of being objectively characterized as true or false; (iii) the immediate context of the communication in which the statement appears; and (iv) the communication's broader social context or setting, which might "signal to readers . . . that what is being read . . . is likely to be opinion, not fact." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 n.7 (2d Cir. 2006) (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 292 (1986)). Courts should avoid "hypertechnical parsing" of written words in an attempt to "identify[] 'possible facts' that might form the basis of a sustainable libel action.'" *Doe*, 2011 WL 2899174, at *3 (quoting *Dworin v. Deutsch*, No. 06-CV-13265 (PKC), 2008 WL 508019, at *4 (S.D.N.Y. Feb. 22, 2008)).

### A. Website Article

I find that the statements identified by Valley in the Website Article are not actionable. First, all of the statements constitute either pure opinion or rhetorical hyperbole. *See Doe*, 2011 WL 2899174, at *3. Each of the statements is supported by a recitation of the facts on which it is based, provided both in the text of the Website Article itself and also through numerous hyperlinks to underlying source material. *See, e.g.*, *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 43 (1st Dep't 2011). Multiple of the complained-of claims are visibly set off from the text of the

Website Article as headers under which Polis provides the facts that she believes support the statements—that is, they are marked as arguments or hypotheses that Polis attempts to support with accompanying facts below. *See* Mot. Dismiss Ex. 2. Further, other claims, such as referring to the 2018 Study as "junk science" or proclaiming that Valley has "no shame or integrity," are examples of "unactionable figurative and hyperbolic statements, even if they are deprecating to plaintiffs." *Mirza v. Amar*, No. 20-CV-2699 (BMC), 2021 WL 148403, at *4 (E.D.N.Y. Jan. 15, 2021) (finding the defendant's statement that the plaintiff, a licensed medical professional, was not a "real" doctor to be hyperbole).

Second, "[i]n addition to considering the immediate context in which the disputed words appear," I am "required to take into consideration the larger context in which the statements were published, including the nature of the particular forum." *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995); *see also Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 150 (2d Cir. 2000) ("A court may also consider whether the 'general tenor' of the publication negates the impression that challenged statements imply defamatory facts about the plaintiff." (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990))). Here, the Website Article is located within the "Blog" section of Polis's website. Mot. Dismiss Ex. 2. "[B]logs and similar online media 'encourage a freewheeling, anything-goes writing style' and . . . 'readers give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts.'" *Biro v. Conde Nast*, No. 11-CV-4442 (JPO), 2014 WL 4851901, at *4 (S.D.N.Y. Sept. 30, 2014) (quoting *Google, Inc.*, 86 A.D.3d at 43–44). Moreover, the Website Article was published on a *personal* website that is ostensibly devoted to sharing Polis's views on certain subjects. *See* Compl. ¶ 14; Mot. Dismiss 2. Accordingly, I find that a reader of the Website Article would have ample "signal . . . that what is being read . . . is likely to be opinion, not fact." *Kirch*, 449 F.3d at 402 n.7

(quoting *Steinhilber*, 68 N.Y.2d at 292).

### B. Buzzfeed Article

I find that the statements identified by Valley in the BuzzFeed Article are not actionable. First, the quoted statement that "[i]t does not appear this company is very interested in providing accurate information to its potential consumer base" is clearly couched as opinion. Compl. ¶ 18; Mot. Dismiss Ex. 2(e). Specifically, the phrase "[i]t does not appear" indicates that Polis is expressing her point of view regarding Valley's actions *as they appear to her*, rather than attempting to assert an objective fact about Valley. Second, even if the unattributed statement, ostensibly written by the author of the Buzzfeed Article, that "[f]or Polis and other critics, Daysy is just one of the many fertility products now flooding the market without solid evidence to stand on" could be imputed to Polis, inclusion of the phrase "[f]or Polis and other critics" also makes clear to the reader that the statement merely reflects the opinion of the individuals interviewed. Compl. ¶ 18; Mot. Dismiss Ex. 2(e).

### C. Gizmodo Article

I find that the statements identified by Valley in the Gizmodo Article are not actionable. None of these statements are attributed to Polis, who is quoted elsewhere in the BuzzFeed Article discussing a different product, Mot. Dismiss Ex. 4; *see Grieve v. Barclays Cap. Sec. Ltd.*, No. 602820/98, 1999 WL 1680654, at *5 (N.Y. Sup. Ct. Sept. 10, 1999) ("Defendants are not responsible for the statements attributable to the periodicals."); *see also Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, No. 06-CV-1260 (KAM), 2009 WL 4547792, at *19 (E.D.N.Y. Dec. 1, 2009) ("[P]laintiff correctly argues that this is not a statement made by or attributed to the plaintiff. Instead, the language is a direct quotation from the *Newsday* article, authored by Keiko Morris, who is not named as a defendant in the counterclaims."), and I am not required to accept

Valley's conclusory assertion that Polis is the direct source of the statements, Compl. ¶ 20; *see Iqbal*, 556 U.S. at 678. Second, even if these statements were attributable to Polis, I find that they are not false statements of fact. Characterizing the retracted 2018 Study as "little more than cleverly worded marketing" is a subjective, hyperbolic description of the reasons for the retraction, which are disputed. Compl. ¶ 20. Additionally, the word "legal" in the sentence "[t]he study was retracted, and Daysy is now the subject of a legal investigation that could lead to lawsuits" includes a hyperlink to the website of a law firm, and thus "a reasonable reader would [not] understand" this statement "as meaning[] that Valley is the subject of official investigation by one or more governmental agencies." *Id.*; *see* Mot. Dismiss Ex. 4; Song, *supra*. Valley does not dispute the existence of an "investigation" by a law firm.

### D. Social Media Posts

I find that the statements identified by Valley in Polis's three social media posts are not actionable. First, the statements in the First Instagram Post do not constitute false statements of fact. The claim that Valley is "particularly unethical" is hyperbole, *Mirza*, 2021 WL 148403, at *4, and both that statement and Polis's mention of Valley's "slick advertising" are reasonably understood as opinion. Mot. Dismiss Ex. 5. Further, the statement "I wish the best of luck to the lawyers who are trying to assist people who may have been harmed by deceptive advertising," *id.*, does not imply, as Valley asserts, that Valley is the subject of an investigation by an official regulatory or governmental agency, Compl. ¶ 21, because Polis previously indicated in the same conversation that she meant that "Daysy is being investigated by a law firm for deceptive advertising"—and she links to source material for this assertion, which Valley has not disputed. Mot. Dismiss Ex. 5.

Second, the statement in the Twitter Post, considered in its proper context, does not constitute a false statement of fact. Although the statement that "Daysy is not, in fact, registered with the FDA" is itself an objectively verifiable statement of fact, Polis immediately clarifies this one statement, which Valley identifies in isolation, in multiple subsequent posts. She explains that she meant that "Daysy is not cleared or approved to be marketed as a contraceptive method," and that her "understanding" is that such clearance or approval "is quite different" than registration. Mot. Dismiss Ex. 6. She follows up this statement, expressing her "understanding," by providing a link to source material on "what 'registered' means to FDA." *Id.* Moreover, Polis's initial request to the user that "[i]f you believe otherwise please share a link" demonstrates that this is an exchange of views, not an assertion of fact. *Id.*

Third, the statement in the Second Instagram Post that "[b]y promoting [the Daysy] device" a user was "putting people in harms way" does not constitute a false statement of fact. This statement is clearly hyperbole and, moreover, an assertion that she supports by asking the user to "[p]lease read my blog where I summarize the unethical behaviors the company has demonstrated" and providing a link to the non-defamatory Website Article. Mot. Dismiss Ex. 7.

Finally, as discussed above, "the nature of the particular forum" in which the social media posts were published weigh in favor of finding that they are comprised of opinion and should be understand as such. *Brian*, 87 N.Y.2d at 51. With respect to interactive social media platforms, there is a "common expectation" that statements published therein "will represent the viewpoints of their authors and, as such, contain considerable hyperbole, speculation, diversified forms of expression and opinion." *Id.* at 53; *see also Brahms*, 33 F. Supp. 3d at 199 (holding that statement was nonactionable opinion where it was "made on an internet forum where people typically solicit and express opinions"). Accordingly, the setting of the allegedly defamatory social media

statements again "signal[s] to readers . . . that what is being read . . . is likely to be opinion, not fact." *Kirch*, 449 F.3d at 402 n.7 (quoting *Steinhilber*, 68 N.Y.2d at 292). Indeed, Polis, a reproductive health epidemiologist, is engaging in debate on important issues of public health through social media platforms that, at their best, serve as forums for just such debate and opinion.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is granted, and plaintiffs' claims are dismissed. The Clerk of Court is directed to enter judgment accordingly and close this case.

SO ORDERED.

Dated: August 6, 2021          _____/s/_____
      Brooklyn, NY              Allyne R. Ross
                                United States District Judge